Again, thank Judge Victoria Calvert. She is with the United States District Court for the Northern District of Georgia, and she has been sitting with us this week by designation. So we thank you for being willing to help out. And for those of you in this courtroom who are new, who have not experienced our traffic light system for argument, when the light is green, keep going. When you see the yellow light, that means you have two minutes left. And when you hit the red light, you can wrap up your thought, or I will wrap it up for you. Those are the two options. Let me call the first case, United States of America v. Demetris Hill, 23-10289. Ms. Palmer, it looks like you have reserved five minutes for a rebuttal, and when you are ready, you may proceed. Your Honors, may it please the Court, I represent Demetris Hill, who was convicted at trial of making a false claim, despite the fact that the prosecution offered no evidence that he made or presented a claim upon the government during the relevant time period in the indictment. In its brief on page 49, the government argues that the claim Mr. Hill made was his 2012 application for disability annuities to his former employer, the Railroad Retirement Board, or RRB. But there was nothing false about that claim. Mr. Hill is disabled, and the government does not contest that. He has no colon. He has a colostomy bag. He's diabetic. He's arthritic. He has bursitis, a torn rotator cuff, torn ligaments in his knee. And so in 2012, the RRB properly decided that he was entitled to disability annuities. And count two in the indictment against him charged that Mr. Hill did knowingly and willfully present a false claim to the government between 2016 and 2021 by withholding information, by inaction, by essentially doing nothing. Wasn't it by cashing the checks or accepting the checks into his account? Your Honor, he passively received payments from the RRB, which distinguishes his situation from false claims cases wherein somebody affirmatively signs a check that they are not entitled to. For example, if somebody files a false tax return and then signs that check, that can be a false claim because you're making or presenting a claim to the government for payment that you know is true. Does that just mean you can never have a false claim in the area of direct deposit? I mean, that seems like a silly rule to me. If you are entitled to the money and you passively receive it and you don't affirmatively make or present any claim, then yes, in this context, you cannot have a false claim. So if you're entitled to the money, then obviously there's never a false claim whether you sign the check or not because it's just the money that you're entitled to. But what if you're not entitled to the money? Can the difference really be whether you get a check in the mail or get it direct deposited to your bank account? The difference is whether or not you affirmatively make or present that claim. And that's why in the cases cited by the government for theft or conversion of government property, it could be potentially a conversion of government property under 641. But those cases, Townsend, Yarborough, Slayton, and that line of precedent, we don't see false claims because if you receive money from the government and don't affirmatively do anything, that inaction is insufficient to meet the first element of 18 U.S.C. 287. What about the fact the Sixth Circuit in U.S. X-ray Augustine v. Century Health says that there is a continuing duty of certification where liability can attach the claim might have been true to begin with, but because there's a continuing duty of certification, which certainly Mr. Hill was apprised of in this case, he was told repeatedly, you have to tell us if you start earning money and your circumstances change. The Sixth Circuit has said the liability can attach if the claim is false later. Why wouldn't we adopt that rationale? Because under U.S. X-ray Augustine Century Health Services in the McNutt case, what we had is a very different situation. First of all, there was never an argument that no claim was made. And in fact, in Century Health Services, Century Health submitted 22 cost reports and cost statements certifying that their contributions were reimbursable by Medicare. And at the time, the claim was false. And then over time, it became false when they never reimbursed the money. But here during the period of time in the indictment between 2016 and 21, there was never a claim made by Mr. Hill whatsoever. In all of the cases cited by the government, there are a series of claims. And that's why in page 50 on their brief, the government references persisting in presenting claims to the government. None of those cases. But this is a continuing claim. So why he makes a claim initially, they say, yes, you're entitled to disability benefits. And it's continuing. And they continue to warn him, you have to update us if you start earning other income or working in any other capacity, whether you earn income or not. And why is, again, why would we not say that you keep getting these reminders, you're told from the very beginning, you have to let us know if circumstances change, that you are in effect certifying that nothing has changed if you keep silent. Because if you look at what Government's Exhibit 1 really is, this application for disability it hasn't changed that he's no longer disabled. There's nothing false about that claim. He still has no colon. He still is diabetic and arthritic. And then what they reference in terms of the certification, it says, I know that I must report. So there's nothing in that claim that turned false, even if we take this distorted proposition that doing absolutely nothing during the relevant time period in the indictment is sufficient to meet element one of 18 U.S.C. 287. But no rational trier of facts could find that element beyond a reasonable doubt when Mr. Hill did absolutely nothing between 2016 and 2021. But even in this application, I get that it says you have to report, but it also says, I know if I'm receiving a disability annuity and fail to report work and earnings promptly, I am committing a crime punishable by Federal law that may result in criminal prosecution. How does, how is that not, it's not just saying failure to report. It is going a little bit further here and saying this is a crime if you don't. Two points on that, Your Honor. Knowing that you're committing a crime in 2012, potentially Mr. Hill still knew that he could potentially be committing a crime in 2016. There's no false claim. It's not as if at the time he's saying, I know, I certify that I know this. And now later we're saying, oh, it's false that you said that you knew that. And further, what that says, both in government's Exhibit 2 and in Exhibit 1, and which was read to the jury, is that one of the potential penalties that you can have is you have to, you have a reduction in your annuity. It doesn't say your annuities will end and it could be a violation of Title 45, Section 231I, which has a maximum penalty of one year in prison. The government doesn't just get to choose any charge and not meet its elements and say because you certified that you would do something, now you're liable for any and every crime that we see fit, even if we can't meet our substantial burden of proof when it comes to it. But he, but as you say, he certified that he would do something, which is report these sorts of gainful employment or income, and he didn't do that. So how, why wasn't that a false claim? Because, Your Honor, he has to, in every other case cited by the government, we have somebody who was given another document, some other form to fill out, and they say, I am not working. I am no longer employed. I have no income. And here, that's not what we have. And similarly, Mr. Hill cannot, no rational trier of fact could have found that he was guilty beyond a reasonable doubt of the elements of 641 and not a single government witness testified that he was not entitled to his annuities because of his earnings or because he was performing substantial gainful activity. And in fact, they testified to the opposite. Special Agent Vince Clancy from the Office of the Inspector General of the RRB testified on cross, is Mr. Hill currently eligible for railroad retirement disability? Is he eligible? I can't answer that question. Do you know if he's still receiving railroad retirement disability? To my knowledge, yes. Ian McCance, the district manager of the RRB's Atlanta field office testified. Can working have any impact on the amount of payment someone is receiving? Yes, depending on the amount of earnings. Have you done the review on Mr. Hill? No, I haven't. Yes, there is, there was evidence that was presented at trial that the disqualification amount was $11,000, $11,875, and also there was evidence presented that on a bank loan application, Mr. Hill reported his annual income was $125,000, and that for this bank loan, he anticipated repayment through business income. How is that not sufficient evidence? What the government has mentioned in its brief about Exhibit 32, which was presented at trial, is that it was a joint application with him and his wife. And just like when my husband and I jointly file our taxes, we report our income together. This is not sufficient to show that he had earnings. And in fact, there was testimony that he had no earnings from Sparkling. But this was not just Mr. Hill. This was Mr. Hill and his wife. Were they still married at the time of the bank application? They were, and the government spends so much time, pages and pages, citing CFRs, regulations which were never before the trier of fact. None of that was presented to the jury. None of that was argued before the jury. And so those points in the government's brief should be considered waived because what was before the jury were the elements of 287 and the elements of 641. And the government cannot meet their heavy constitutional burden as to those elements given the evidence that was presented at trial. The government could have asked those witnesses, based on what you've seen Mr. Hill do with Sparkling, is he ineligible? Was he performing substantial gainful activity? Did he have these earnings? No, they didn't. And that's not enough to meet their burden when it comes to the heavy constitutional obligations they have when it comes to Mr. Hill's liberty. Thank you. Thank you, and you do still have five minutes for rebuttal. Mr. Walker. Good morning, Your Honors. May it please the Court, Stuart Walker for the United States. On the earnings cap threshold question that we were just talking about, my friend says that there was no evidence at trial that if he exceeded these earnings caps that he would be disqualified from receiving his disability annuity as a matter of law, and that's not true. Mr. McCance testified at trial that if an annuitant exceeds a monthly income cap, then he's ineligible for any disability annuity in that month. And similarly, if an annuitant exceeds the yearly amount, he's ineligible for any amount for that whole year. Let me ask you a question just sort of right off the bat that is something that I'm struggling with. So he can, Mr. Hill can also be disqualified if he's convicted of a crime, correct? If he's convicted of a crime? Yeah. Could that be disqualified? He has to report that. That was part of his reporting obligation, correct? The reporting obligation was that if he doesn't report the things he's required to report, he can be prosecuted. Okay. So let me get to the basic question that I have, which is he never, as I understand it from the record, he did not stop receiving these benefits until he was convicted at trial. Is that correct? So if, I guess I'm struggling with why did the government not, if they've already determined, they've started an investigation that he's not entitled to these benefits, why did they keep paying him, why did the government keep paying him benefits at trial? Your Honor, the testimony at trial was that they didn't have all the information necessary because he was not forthcoming with all the things that he was doing to allow them to make a determination. So for example, But doesn't that, doesn't that help Mr. Hill that he has committed a reporting violation? Sure. But he's, how is it, how does it jump to theft of government property if the government had not yet determined even through trial that he wasn't entitled to these benefits? Maybe I can take a more direct route to resolve the question that's in your mind. Slayton rules out any argument that a prior ineligibility determination would defeat a claim under Section 641. So footnote 4 of Slayton says that Eric Slayton received the unemployment benefits from the Department of Labor and the Postal Service all the way up until his conviction. And that is not a bar there. And in fact, the argument that is made on pages 4 and 5 of Mr. Hill's reply brief, and I urge the Court to pull it, the bottom of page 4, top of page 5, that is the same argument that Eric Slayton made in Eric Slayton's reply brief at page 8 and 9. And when I say the same argument, I'm talking about down to the prepositions, the commas, and the em dashes. Now, I'm not faulting my friend for lifting an argument for Mr. Slayton's brief. We do that as lawyers all the time if we think it's a good argument. But what I am saying to the Court is that Mr. Slayton made the same argument. He said, well, the doctors never made a determination that he was ineligible to receive the unemployment insurance. And therefore, he didn't know he was not eligible to keep receiving it. And this Court in Slayton saw that as no obstacle. And so that argument was raised and rejected. And similarly, we cited a bunch of cases in our brief where 641 convictions were affirmed, even though there was no preliminary ineligibility determination made until trial. It's the 12 jurors who were the finders of fact who made the determination that given the evidence and what Mr. Hill was capable of doing during the relevant five-year period, that when he did that and didn't report it, that in itself rendered him ineligible. What about this argument that in other false claims cases, we actually have an affirmative representation by the claimant, whereas here, he just passively accepted the payments? So our theory on whether there was a claim, and I want to keep these two things discreet. So the False Claims Act requires a making of a claim, and then it's either false or fraudulent. So you get into affirmative misrepresentations versus omissions on the false or fraudulent aspect. But as for the making of the claim, it's our position, and as Judge Branch, I think, noted, this is a continuing claim. Every month when he receives, retains, and makes use of the funds by direct deposit, he is in essence making a claim to the government to be entitled to them. Now, this is where the paper check cases are extremely instructive on this point. So the Second Circuit and the First Circuit have expressly held that when a person presents a refund check for payment, that's the making of a false claim under the False Claims Act. The First Circuit in Skolnick, 331 F. 2nd. 598. The endorsement and deposit for collection of a government check known to be issued by mistake is the presentation of a false claim. Now, why do I say those are particularly instructive? Because as anybody who's ever taken a class in commercial paper knows, when a person goes to deposit a check for collection, they're not making a claim against the drawer of the check. They're making presentment warranties to the depository bank that this is not altered, this is not forged, I'm entitled to enforce it. They're not making a claim on the drawer because the drawer of the check has already instructed it to be paid. So when the United States Treasury writes a check, to me, they've already instructed that its bank make that payment. I'm not, when I go to the bank to deposit it, I'm not making a formal claim on the government. And so by analogy then, the real theory, if you want to understand what those cases are saying, is the theory is making use of the money, retaining the money, receiving the money, retaining the money, and making use of it is in essence making a claim against the government. That's the only way to understand those cases. And so by analogy, just because the money is received by direct deposit doesn't change what it means to be making the claim. And so that's where the claim part comes in. Let me ask you, let me bring you back to 641 for a second, and I know we're moving back and forth between these two issues. What would happen, hypothetically speaking, a Mr. Smith is entitled to these benefits, is getting these benefits, and all of a sudden starts to do some work when he earns $500 in a year and he doesn't tell the government about it. So that's a reporting violation, but he hasn't come anywhere near the threshold such that he would stop receiving these benefits. What happens to him? So the earnings threshold is not exhaustive of what can disable you from getting the disability annuity. In other words, if you work for pay or not, and in these notices he's told you've got to report any work whether you receive pay or not. So whether he makes $5 or $500,000, he has to report it. Then the RRB can investigate and say, are you capable of engaging in substantial gainful activity? Even if you are and you're under the threshold amount, that disqualifies you. Because what the statute says is in order to get this annuity, you have to be disabled for regular employment. Disabled for regular employment means not capable of undertaking substantial gainful activity. The only way to measure that and to see if you are capable of undertaking this substantial gainful activity is to tell them and let them make an assessment. So the earnings thing we've said in our brief is a proxy for substantial gainful activity. That's just an easy check mark. If you exceed this... Let's continue to narrow down my hypothetical then. Let's assume that you do the investigation and determine that this Mr. Smith in my hypothetical is not capable of doing substantial gainful activity. This is $500, that's it. What happens? He didn't tell you about it. He could still be charged with violating his obligation to report, but I think a rational jury would not be able to convict him if the determination is made that what he did was not substantial gainful activity. So it would be a failure to report charge. I just think it wouldn't sustain a conviction if in fact he wasn't capable of doing that work. So Slayton does a lot of work here on that point too. In that case, you'll remember it was an unemployment benefits case, a former postal worker. And what the panel said is that conviction was sufficient if the testimony at trial established that he could do certain work during the relevant time period and he either misled or concealed from the Postal Service information that would allow them to make a decision about whether he could. And the testimony was he could do limited duty work and he didn't do it and he concealed information. And so by analogy, what the analogy is here, there was testimony at trial that he was under an obligation to report if his earnings exceeded a certain cap. There was testimony that if it did exceed that cap, then he was automatically ineligible for the benefits. And there was further evidence that he concealed information from the RRB that he could do that, I mean, I'm sorry, that he did earn that money. That's a reasonable inference from the loan application. We've made a big deal about that because that is Mr. Hill's own certification to Morris Bank that he had business income of $125,000. But didn't he say that his wife had issues because of her name, the license thing? So, I mean, that could have been the same issue here where he was presenting the loan application on behalf of his wife and it doesn't go as far as you want it to go in terms of that being his income. It was a joint application. Well, Your Honor, I think that boils down to a classic case of multiple competing inferences. I mean, that could have been an inference drawn, but the jury here convicted him. And on sufficiency review, this Court has to review the record in light of what supports the jury verdict. And it might have been fair to argue that as an inference, but this Court can't disturb the inference made by the jury. Why is it that the OIG investigation couldn't play out to make a determination as to whether Mr. Hill could not get these benefits? I mean, I can't answer what's not in the record about why they didn't follow through. Well, wouldn't that make it easier for us here to know that he was not entitled to these benefits? Well, the jury determined he wasn't entitled to them. The jury was not asked that specific question, right? I mean, your verdict form is just a standard verdict form. Well, we didn't use a special interrogatory, but that's necessarily part of its conclusion because the charge is that you wrongfully took money you were not entitled to. And the reason you wrongfully took money you were not entitled to is because you were doing things that rendered you ineligible for the disability annuity. Number one, engaging in substantial gainful activity. There was testimony from one of the customers of Mr. Hill's company that he came out and actually performed the cleaning services. He prepared in 2017 a business proposal for other customers that said he was a lead cleaning professional, that he was an owner of the company and he was a pioneer since its inception. The OIG didn't have those documents. Why? Because he didn't reveal it. Now, this is important. In April 2021, OIG investigators Clancy and Williams meet with Mr. Hill here in Atlanta as part of their investigation. They start asking him questions about this company. And the testimony at trial is that he was not forthcoming. His story evolved as they went on. He said, oh, I just helped her do computer work. I wasn't doing any physical labor. I didn't have anything to do with it. But what's important to underscore is what Mr. Hill did not share with them. He didn't share the business proposal from 2017. He didn't share the loan application where he reports substantial income. And let me point up another thing. In 2019, one of these annual notices, the sixth of the one that we tendered and introduced at trial, it says you must report immediately to the RRB if you have monthly earnings of $950 in 2019. Well, the conclusion that he was guilty, then that shakes out to over $10,000 a month. Okay. And the annual exclusion amount is $11,875. If the jury believed he had business income from his cleaning business of $125,000, then in 2019 alone, he was ineligible for the disability annuity. And so we think the evidence was plainly sufficient for a rational juror to report and he didn't report that for the 641 charge, he took government money in excess of $1,000 and therefore committed a crime that it prescribes. Now, the question about this not being money of the United States, I think, is a non-starter under McCree. I mean, McCree says a check drawn on the U.S. Treasury is obviously government property and it doesn't lose its character once it's received by the recipient. And so if I can just make a couple of broad points back, I'm switching back to the 287 claim, the False Claims Act claim. I think the limitations that my friend wants to put on the face of the statute are artificial and that they are not to be found in the statute. It says make a claim, but it doesn't say the manner in which the claim is to be made. It doesn't, you know, particularize with any specifics about what that's supposed to look like. And giving it sort of that cramped interpretation runs headlong into what the Supreme Court has told us about interpreting the False Claims Act in particular. And what they said in Niefert White, which is cited in our brief, in a various context in which the question of the proper construction of the act had been presented, the court has consistently refused to accept a rigid, restricted reading even as to the criminal sanctions. Because you might ask yourself, well, this is a penal statute, so don't we have to construe this, you know, in a more restrictive manner? And that also is a non-starter under the Supreme Court's case law, a case called Corbett 215 U.S. 233. The rule of strict construction does not require the narrowest technical meaning given to the words employed in a criminal statute in frustration of the obvious legislative intent. This court in 1981, the former Fifth Circuit, in a case binding under Bonner, criminal statutes are not interpreted in such a manner as to defeat the obvious legislative purpose, which the Supreme Court has said this statute was designed to reach all types of fraud without qualification that might result in financial loss to the government. A dear mentor of mine has been a judge as long as I've been alive is fond of saying that 99% of the law is common sense, and the other 1% is just wrong. We live infirmly in the 99% category. And for these reasons, we'd ask that Mr. Hill's conviction be affirmed. Thank you. Thank you. Ms. Palmer, you have five minutes. Your Honor, I would like to distinguish Mr. Hill's situation from Slayton. Judge Calvert is correct to ask why the OIG investigation here did not play out as it did in Slayton because they are dissimilar. In Slayton, actually, in 2012, after the OIG observed Slayton for over 160 hours and saw him working out, lifting over 100 pounds, and driving, which is what he told his doctor he could not do, they then sent a letter notifying him that they intended to terminate his benefits. Now, ultimately, when he got to trial, his benefits had been reinstated. They said, you know, what we saw, it's not enough for us to make that determination. But they had 160 hours of surveillance, and they had testimony at trial from his ex-girlfriend that he had driven from Alabama to Arkansas. And as a postal carrier, that was the exact thing that he professed he could not do. And therefore, there was sufficient evidence for a jury to conclude that he was receiving money to which he was not entitled. But here, what we had before the trier of fact was something far different. We didn't have testimony from a claims representative that said, oh, Mr. Hill is not entitled. We didn't have testimony like we had from Mr. Slayton's girlfriend that Mr. Hill was doing exactly what he said he could not do. What we had — We had Mr. Hill purporting to be a lead cleaner and allegedly doing at least some cleaning. I mean, isn't that — disability benefits aren't just a bonus special payment because you've had a very horrible thing happen to you. It's because you can't work. And the evidence, I think, was sufficient for the jury to see that he very well could work. So why isn't that enough? It's not enough because what was before the jury is that he took measurements twice over the course of five years. He sent three emails over the course of five years. And he assisted with cleaning less than five times over the course of five years. And this is far different than the evidence that was before the jury and every other case cited by the government where you had these thorough, in-depth investigations and you had claims representatives testifying at trial that had they knew this, this person would be ineligible. And instead, here, we have Agent Douglas Williams. We have Agent — or we have Ian McCants, the district manager of the RRB, and Agent Vince Clancy all on the stand. And the government had every opportunity to say, now, if Mr. Hill was doing — sending three emails, taking measurements twice, cleaning five times in the course of five years, would this be substantial gainful activity? They didn't ask that question. And when those individuals, the government's witnesses, were on cross-examination, they said they couldn't say. I don't know if he's still eligible. I know he's still receiving benefits. And when it comes to earnings, they testified, when you reviewed the bank records, was Mr. Hill on the payroll? No. Were there any distributions to Mr. Hill in the bank documents you reviewed? Not that I noticed. And so when the government cites earnings and an earnings cap, what Ian McCants testified to is that earnings are wages before payroll deductions, commissions and other payments for work, net earnings from self-employment. And that evidence was not before the jury. But there's a lot of other evidence that his wife or his ex-wife and Mr. Hill were the two general partners for SPARClean, reflecting that Mr. Hill owns an equity interest in and had a right to control and receive profits from the partnership, that Hill served as its chief financial officer. So you have these two sole owners. The Articles of Organization name his ex-wife and Mr. Hill as the managers. He was the chief financial officer after the conversion. He was the authorized signer on the checking account. We do have his ex-wife testifying on the stand about his help in running the business. I'm not sure that her testimony was perhaps as helpful as we might have anticipated. I think it actually comes back to hurt him a little bit, because she does talk about his involvement. So how do you work through that? Well, in terms of his ex-wife's testimony, that's after the motion for judgment of acquittal and before the court ruled. And so I think the snapshot provision of 29B precludes us from considering it. But what Ian McCants read into the record, the definition of substantial gainful activity is work which results in earnings or work involving the performance of significant physical and mental duties or a combination of both, which are productive in nature. And had the government asked their witnesses that they put on the stand to meet their burden, whether those few things, taking measurements twice, sending emails, was sufficient to be substantial gainful activity, they could have done it, and they did not. And therefore, this was a case based on speculation and conjecture. No rational trier of fact could have found Mr. Hill guilty of 287 and 641, and we respectfully ask this court to reverse. Thank you. Thank you both. We have your case under advisement. I'll let you have a chance to get set up, but I'm going to go ahead and call the second case.